UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**MARK J. PAULDING,**
    Debtor

Chapter 7
Case No. 05-15152-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**DONALD R. LASSMAN, CHAPTER 7**
 **TRUSTEE,**
    Plaintiff

v.

Adv. P. No. 06-1025

**MARK J. PAULDING and**
**LISA C. PAULDING,**
    Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**MEMORANDUM**

## I. INTRODUCTION

The matter before the Court is the Defendants' Motion for Partial Summary Judgment with respect to Counts I (Denial of Discharge - 11 U.S.C. § 727(a)(2)(A)), III (Fraudulent Transfer - 11 U.S.C. § 548), IV (Recovery of Fraudulently Transferred Property - 11 U.S.C. §§ 550 and 551), V (Objection to Exemption - Fed. R. Bankr. P. 4003 and Mass. Gen. Laws ch. 188, § 1), and VII (Objection to Exemption - Fed. R. Bankr. P. 4003 and 11 U.S.C. § 522(g)) of the Trustee's eight-count Complaint. The Plaintiff filed an Opposition to the Motion. The issue presented is whether the Defendants have sustained their burden

1

of showing the absence of genuine issues of material facts and entitlement to judgment as

a matter of law with respect to the counts identified in their Motion. *See* Fed. R. Civ. P.

56(c), made applicable to this proceeding by Fed. R. Bankr. P. 7056. More specifically, the

determinative issue is whether the decision of the United States Court of Appeals for the

First Circuit in In re Bajgar, 104 F.3d 495 (1st Cir. 1997), a case in which the court ruled that

the debtor was not entitled to a discharge under Chapter 7 even though he reversed a

fraudulent conveyance postpetiton is determinative of the outcome in this case where the

Debtor caused a property transfer to be reversed *before* he filed a Chapter 7 petition.

## II. FACTS

The Debtor filed a voluntary Chapter 7 petition on June 6, 2005. On Schedule A-Real

Property, he listed an ownership interest in real property located at 85 Mayflower Road,

Plympton, Massachusetts (the "Property"). On Schedule C-Property Claimed as Exempt,

he claimed a homestead exemption in the Property, pursuant to 11 U.S.C. § 188, § 1, in the

sum of $115,000. The parties do not dispute that Lisa Paulding ("Lisa"),[1] the Debtor's

spouse, executed several Declarations of Homestead with respect to the Property. She

executed the first Declaration on January 20, 2005, which was recorded on the same day in

the Plymouth Registry of Deeds. She executed a second Declaration of Homestead on

January 21, 2005, which was recorded in the Plymouth Registry of Deeds on February 22,

---

[1] On Schedule I-Current Income fo Individual Debtor(s), the Debtor disclosed that Lisa was employed as a paralegal by Shannon Pine, Esq.,  Attorney Pine shared office space with Attorney John H. Wyman, whose deposition testimony is discussed below.

2005, and she executed a third Declaration of Homestead on April 22, 2005, which was recorded in the Plymouth Registry of Deeds on the same day.

On Schedule D-Secured Creditors, the Debtor listed three secured creditors: Colonial Ford as the holder of a lien secured by a 2005 Ford F150 pickup truck purchased on June 1, 2005; Option One Mortgage Corp. as the holder of a mortgage secured by the Property in the sum of $306,912.44; and Williams Building Company, Inc. ("Williams") with a claim in the total sum of $338,846, secured in part by a trustee process attachment of funds in the sum of $33,846.96 in the Debtor's account at Eastern Savings Bank, formerly Plymouth Savings Bank.

In his Statement of  Financial Affairs the Debtor revealed information about his acquisition of the Property. He disclosed that he and Lisa acquired title to the Property on January 20, 2005 for stated consideration of $423,000. They granted Option One Mortgage Corp. a first mortgage on the Property to secure a purchase money loan in the amount of $338,400. The Debtor stated that, on the next day, "on the advice of counsel," he and his spouse conveyed the Property to Lisa, individually, for "nominal consideration." The Debtor also stated that approximately two months later, on April 22, 2005, Lisa conveyed the Property to him and herself as tenants by the entirety for "nominal consideration, to reverse the January 21, 2005 conveyance." As noted above, Lisa recorded Declarations of Homestead on January 20, 2005, February 22, 2005, and April 22, 2005. The last Declaration

of Homestead was preceded by the recordation of the deed.[2]

In his Statement of Financial Affairs, the Debtor revealed that on June 1, 2005, less than one week before he filed his Chapter 7 case, he sold two vehicles, a 2003 Ford F350 crew cab and a 2004 Ford F250 pickup, to Colonial Ford for a total of price of $39,500. He stated that on May 5, 2005, he paid Option One Mortgage Corp. $32,712.58, at a time when the loan was not in arrears, thereby reducing the mortgage on the Property. The Debtor admitted that he had previously only made regular monthly mortgage payments.

In his Complaint, the Trustee alleged that the Debtor paid Option One Mortgage Corp. $39,500 on June 3, 2005, three days prior to the petition date, rather than on May 5, 2007. In his Answer to the Trustee's Complaint, the Debtor admitted that he made the payment on June 3, 2005, although he denied that he made the payment with the intent to hinder, delay, or defraud his creditors as the Trustee alleged.

Early in the Debtor's bankruptcy case, Williams, a construction services corporation which had employed the Debtor as a construction superintendent responsible for overseeing field activities relating to its various construction projects, filed a Motion for Relief from the Automatic Stay. It sought permission to continue litigation which it had commenced against the Debtor in the Massachusetts Superior Court on June 11, 2004. At

---

[2] The Defendants admit that the deed pursuant to which Lisa transferred the Property to herself and the Debtor as tenants by the entirety was recorded on April 22, 2005 at 3:50 pm and that the Declaration of Homestead was recorded on the same date and at the same time. They note, however, that the book and page reference for the deed is 30390/338 and that the book and page reference for the homestead is 30390/339, indicating that the recordation of the deed preceded the recordation of the homestead. The Plaintiff has not challenged this assertion.

4

the time the Debtor filed his Chapter 7 petition, Williams was prosecuting its Second

Amended Complaint, which contained counts for breach of the duty of loyalty and

misappropriation of corporate opportunities and improper customer solicitation; breach

of fiduciary duty; tortious interference with present and future advantageous relations;

tortious interference with contractual relations; misappropriation of confidential

information/trade secrets; and wrongful conversion; deceit/fraudulent misrepresentation.

Williams also had asserted two counts against the Debtor and Lisa in which it alleged

fraudulent transfers in violation of Mass. Gen. Laws ch. 109A.

Both the Trustee and the Debtor opposed Williams's Motion, and, on September 20,

2005, after the Court had granted several continuances at the parties' request, the Court

denied the Motion for Relief from the Automatic Stay. Shortly thereafter, Williams filed

a Complaint to Determine Dischargeability of Debt under 11 U.S.C. § 523(a)(2), (a)(4), and

(a)(6) against the Debtor, which is pending.

On January 12, 2006, the Trustee commenced the above-captioned proceeding.

Approximately one month later, he filed an objection to the proof of claim filed by

Williams, in which Williams asserted a secured claim in the sum of $33,846.96 and an

unsecured claim in the sum of $304,269.04. The Trustee objected to the claim on the ground

that "the claimant has not demonstrated to the Trustee's satisfaction that the claimant has

a claim against the Debtor." Williams, in response, stated that the Trustee's objection was

premature and requested that the Court either overrule the objection or continue the matter

generally until the conclusion of its adversary proceeding. Subsequently, the parties,

through a joint motion, asked the Court to consolidated the Williams adversary proceeding

and the objection to claim. The Court allowed that motion, but amended its order on May

24, 2006 when, at the request of Williams and the Debtor, the Court stayed Williams's

adversary proceeding, but permitted the objection to claim to proceed.

On September 6, 2006, the Court approved a partial settlement between the Trustee

and Williams with respect to the secured portion of Williams's claim.  Specifically, the

Court allowed Williams a secured claim in the sum of $21,846.96, and Williams agreed to

turnover the remaining $12,000 of the funds subject to its trustee process attachment to the

Trustee.

With respect to the transfers of the Property, the Debtor, consistent with the

representations he made in his Statement of Financial Affairs, testified at the section 341(a)

meeting and also at his deposition that the reason he transferred the Property to Lisa on

January 21, 2005 was due to the advice of his counsel in the Williams litigation, Attorney

John H. Wyman, and that the reason Lisa transferred the Property back to him and herself

as tenants by the entirety on April 22, 2005 was on the advice of his former bankruptcy

counsel, Attorney William G. Billingham, who is now deceased.

Attorney Wyman's deposition testimony, however, was not consistent with the

Debtor's testimony.  Attorney Wyman stated:

> Q. Did you provide any advice to either Mark or Lisa about doing such a
> transaction [recording a deed from the Debtor and Lisa, as tenants by the
> entirety, to Lisa, individually]
> A. No.
> Q. So, is it fair to say that you gave no legal advice whatsoever to either Mark

6

or Lisa with regard to Exhibit 2 [the deed]?
A. That is correct.
Q. Your only involvement was simply being the person who notarized the
signature?
A. Correct.

Attorney Wyman attempted to explain how the Debtor might have come to believe he

made the transfer to Lisa upon advice of counsel. He opined:

> I'm just trying to think what I - - I would only be speculating, but I think he
> was starting out a business. I might have said something, you might want
> to incorporate to protect himself from various activities, because he is in the
> contracting business; so, to that extent, specifically about this property - - and
> I didn't, you know, the subject didn't come up about that. And I didn't - - I
> mean, you've got to understand that he was - - I don't want to minimize it,
> but Lisa prepared the deed. Mark came in, probably lunch time, if I was a
> betting person, and she transferred the property. Mark signed it. She signed
> it. I notarized it. I didn't record it.

<div align="center">***</div>

> . . . [I]f we had the discussion about starting out his company and forming a
> corporation or doing something going forward with that, that kind of advice
> I may have given him to protect himself from predators out there . . . I would
> think that he would want to keep his business operations in one pocket and
> his personal operation in another. . . .

<div align="center">***</div>

> I'd only speculate that every time he came into my office, maybe with I'm
> standing there, I'm giving him advice, I don't know. You've got to
> understand the uniqueness of it, of the situation; that is, that Mark would
> come into my office to see his wife or to pick up things or do whatever; and
> on occasion, we may talk about things in general. But he may have - - he
> came in - - I didn't summons him in to sign this document. He came in. I
> was there. And he signed it. And I notarized it. I didn't tell him to sign it.
> Lisa told him to sign it probably, as she would have, but I didn't tell him to
> sign it. And I didn't have a discussion with him that you better sign this
> because, that kind of stuff; that would be advice to me.

<div align="center">7</div>

## III. THE TRUSTEE'S COMPLAINT

Based on the above facts, as well as an allegation that the Debtor was in default in payments to a number of creditors on January 21, 2005, and an allegation that the Debtor sold his two trucks to Colonial Ford with the intent to hinder delay and defraud his creditors, two allegations that the Debtor denied, the Trustee formulated the following counts pertinent to the Defendants' Motion for Partial Summary Judgment: Count I: Denial of Discharge - - 11 U.S.C. § 727(a)(2)(A); Count I (Denial of Discharge - 11 U.S.C. § 727(a)(2)(A)), Count III (Fraudulent Transfer - 11U.S.C. § 548), Count IV (Recovery of Fraudulently Transferred Property - 11 U.S.C. §§ 550 and 551), Count V (Objection to Exemption - Fed. R. Bankr. P. 4003 and Mass. Gen. Laws ch. 188, § 1), and Count VII (Objection to Exemption - Fed. R. Bankr. P. 4003 and 11 U.S.C. § 522(g)).  With respect to specific allegations pertaining to each count at issue, the Trustee alleged that the Debtor transferred his interest in the Property and the two trucks within one year of the bankruptcy and with the intent to hinder, delay, or defraud one or more creditors, thereby warranting the denial of his discharge.  The Trustee repeated those allegations with respect to his avoidance and recovery claims under sections 548, 550, and 551 of the Bankruptcy Code (Counts III and IV), adding that the Debtor was insolvent on the date of the transfer or rendered insolvent by the transfer and that he received less than a reasonably equivalent value in exchange for the transfer.

With respect to Counts V and VII, the Trustee alleged that the conveyances on

8

January 21, 2005 and/or on April 22, 2005 terminated the homestead. Alternatively, he alleged that the Debtor's pre-January 21, 2005 interest in the Property is subject to recovery pursuant to 11 U.S.C. §§ 550 and 551 and that pursuant to 11 U.S.C. § 522(g) the Debtor may not exempt his pre-January 21, 2005 interest in the Property.

## IV. DISCUSSION

### A. Positions of the Parties

The Defendants' principal argument is that the Debtor should not be denied a discharge under section 7272(a)(2)(A)[3] and that the Trustee should not be entitled to recover the Property because the Debtor reversed the allegedly fraudulent transfer prior to filing his bankruptcy petition. They distinguish In re Bajgar, 104 F.3d 495 (1st Cir. 1997), noting that the First Circuit left open for decision precisely the scenario present in the instant case when it stated: "We need not decide now either the effect of a reconveyance made prior to the filing of a voluntary bankruptcy petition or the question of a retransfer effected immediately following the filing of an involuntary petition." Id. at 499.

### B. The Trustee

The Trustee points out that in Count I he has alleged that the Debtor fraudulently

---

[3] Section 727(a)(2)(A) provides in relevant part:
(a) The court shall grant the debtor a discharge, unless-
    (2) The debtor, with intent to hinder, delay, or defraud a creditor . . . has transferred . . .
        (A) property of the debtor within one year before the date of the filing of the petition.

11 U.S.C. § 727(a)(2)(A).

9

transferred both the Property and two trucks with actual intent to hinder, delay, or defraud one or more creditors. He states that while the Defendants' argument is admittedly based on undisputed facts, their construction of section 727(a)(2)(A) is wrong and the transfer of the trucks, which the Defendants did not address, is an independent basis for denial of discharge under section 727. He adds that the Defendants failed to address his contentions under Counts III, IV, V, and VII.

The Trustee argues that there is sufficient evidence in the record from which this Court can infer that the Debtor transferred property with the intent to hinder, delay, or defraud, particularly as the Debtor did not expressly contend, and support with an affidavit, his lack of intent to hinder, delay, or defraud his creditors when he made the January 21, 2005 transfer and when he sold the vehicles. Moreover, the Trustee states that all reasonable inferences must be drawn in his favor and they amply establish that the Debtor's fraudulent intent or at least create a genuine issue of material fact. Citing Marrama v. Citizens Bank of Massachusetts (In re Marrama), 445 F.3d 518, 522 (1st Cir. 2006), and Groman v. Watman (In re Watman), 301 F.3d 3, 8 (1st Cir. 2002), he maintains that except for the absence of concealment, the objective indicia of fraudulent intent exist in this case, including an insider relationship, retention of possession, benefit or use, and lack or inadequacy of consideration for the transfer.

The Trustee makes additional arguments. He asserts that the First Circuit's criticism of the decision in First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339 (9th Cir. 1986), its approving references to the decision in Davis v. Davis (In re Davis), 911 F.2d 560 (11th

Cir. 1990), and its analysis of the "plain language" of section 727 compel the conclusion that

it would not distinguish its holding in Bajgar under the circumstances of this case. The

Trustee focuses on the First Circuit's language in its holding: "It is for Congress to

determine whether or not this exception should be recast." 104 F.3d. at 502. *See also* Village

of San Jose v. McWilliams (In re McWilliams), 284 F.3d 785, 792 (7th Cir. 2002)(fraudulent

transfer reversed postpetition; debtor denied discharge).

Finally, the Trustee emphasizes that the Defendants failed to address any of the

counts except Count I in their Motion for Partial Summary Judgment. He states:

> Critical to an understanding of plaintiff's causes of action under these counts
> is the fact that the Debtor's interest in the Real Estate that would be
> recovered through the avoidance of the January 21 Transfer is not the same
> interest as what was re-transferred to the Debtor three months later. What L.
> Paulding transferred to the Debtor on April 22, 2005, and what the
> bankruptcy estate had on the petition date, was an interest in the Real Estate
> through a tenancy by the entirety. If, however, the Trustee avoids the January
> 21 Transfer, then what the Trustee recovers is not a tenancy by the entirety
> interest, because the tenancy by the entireties ceased to exist upon the
> voluntary transfer by both the Debtor and L. Paulding to L. Paulding. *See* In
> re Goldman, 111 B.R. 230, 233 (Bankr. E.D. Mo. 1990) (when debtor and
> spouse conveyed property to their son, the tenancy by the entireties ceased
> to exist, and after the trustee avoids the transfer he recovers the transferred
> property for the benefit of the estate; "The parties are mistaken when they
> assume that the property is conveyed back to the Debtor and his wife as
> tenants by the entireties."); *accord,* In re Cowles, 143 B.R. 5, 10-11 (Bankr. D.
> Mass. 1992) (transfer to trust by debtor and wife acting together of property
> owned as tenancy by the entirety terminated the tenancy by the entirety, and
> such tenancy by the entirety does not renew itself automatically when trustee
> recovers debtor's interest under §§ 544 and 550 of the Bankruptcy Code).
> That recovered interest in the Real Estate, not being subject to the interest of
> L. Paulding in a tenancy by the entirety, is of significantly greater value to the
> bankruptcy estate than the tenancy by the entirety interest owned by the
> bankruptcy estate on the petition date.

C. Analysis

The determinative issue which the Court must address is whether the Debtor salvaged his entitlement to a discharge by causing the conveyance to Lisa to be reversed prior to filing his Chapter 7 petition. For the Court to rule in the Debtor's favor requires careful consideration of the First Circuit's decision in Bajgar.

In Bajgar, the debtor, at a time when he faced a collection action, transferred his interest in a vacant parcel of land in Florida to his spouse, "purportedly as a belated engagement gift, delayed twenty-three years" in return for "love and affection." 104 F.3d at 496. Less than one year later, in May of 1994, he filed a Chapter 7 petition, disclosing the fraudulent transfer in his Statement of Financial Affairs. Id. At the section 341 meeting of creditors, which was held in June, the debtor and his spouse volunteered to reconvey the Florida property. Id. at 496-97. Nevertheless, in August, a creditor filed a complaint objecting to the debtor's discharge pursuant to 11 U.S.C. § 727(a)(2)(A). After the commencement of the adversary proceeding, at the debtor's request and on the advice of counsel, the debtor's spouse reconveyed the property to herself and the debtor jointly by quitclaim deed. Id. at 497.

Although the bankruptcy court and the district court held that the conveyance did not constitute grounds to deny the debtor a discharge, the First Circuit disagreed. It determined that "[t]he statutory language of Section 727(a)(2)(A) is sufficiently plain," adding that it specifically authorized "denial of discharge if the debtor 'transferred' property within one year prior to the date of filing the bankruptcy petition; it does not

12

qualify this provision with a clause to the effect that transferred property must remain

transferred." Id. at 498. Noting that the Bankruptcy Code defined the term "transfer"

broadly, see 11 U.S.C. § 101(54), and that the legislative history offered no guidance in

interpreting the term's meaning, the court stated: "[l]imiting the definition of 'transferred'

to 'transferred and remained transferred,' in fact, would contradict the drafters' intent."

Id.

The First Circuit considered and then rejected the debtor's argument that courts

should not read statutory words "'with the ease of a computer' and that equitable

principles should be the overriding consideration. Id. (citing Bank of Marin v. England, 385

U.S. 99, 103 (1966)). In a footnote, it also rejected the district court's approach, explaining

as follows:

> The district court reasoned that "'the statutory right to a discharge should
> ordinarily be construed liberally in favor of the debtor.'" Martin v. Bajgar (In
> re Bajgar ), C.A. No. 95-12562-MEL, slip op. at 2-3 (quoting In re Tully, 818
> F.2d 106, 110 (1st Cir.1987)). Although Tully did posit that "'[t]he reasons for
> denying a discharge to a bankrupt must be real and substantial, not merely
> technical and conjectural,'" it also directed that, "[o]n the other hand, the
> very purpose of certain sections of the law, like 11 U.S.C. § 727(a) [ ], is to
> make certain that those who seek the shelter of the bankruptcy code do not
> play fast and loose with their assets or with the reality of their affairs." Tully,
> 818 F.2d at 110 (quoting Dilworth v. Boothe, 69 F.2d 621, 624 (5th Cir.1934)).
> In a more recent case, moreover, we explained that "[e]xceptions to discharge
> are narrowly construed in furtherance of the Bankruptcy Code's 'fresh start'
> policy and *the claimant must show that its claim comes squarely within an
> exception enumerated in Bankruptcy Code § [727(a)(2) ].*" Menna, 16 F.3d at 9
> (emphasis added). In this case, Martin's claim that Bajgar should be denied
> discharge because Bajgar fraudulently transferred property within one year
> before the filing of the bankruptcy petition falls squarely within the exception
> that Section 727(a)(2)(A) enumerates. See 11 U.S.C. § 727(a)(2)(A). The Tully
> court's instruction, therefore, does not control this case.

13

Id. at 498 n.1.

In addition to rejecting the reasoning of the district court, which the Defendants urge this Court to adopt because of the prepetition re-transfer, the First Circuit cited with approval the decision of the Eleventh Circuit in Davis v. Davis (In re Davis), 911 F.2d 560 (11th Cir. 1990), which is factually indistinguishable from the instant case.[4] The First Circuit quoted the Eleventh Circuit's reasoning in rejecting the interpretation of the word "transferred" as "transferred and remained transferred" based upon section 727(a)(2)(A)'s plain and unambiguous language:

> "Congress certainly was capable of drafting a statute which would deny a discharge only when assets were fraudulently transferred and remained transferred at the time of filing of bankruptcy proceedings, but it did not. We are a court and not a legislative body; therefore, we are not free to create by interpretation an exception in a statute which is plain on its face."

Bajgar, 104 F.3d at 499 (quoting Davis, 911 F.2d at 562).

Not only did the First Circuit favorably cite Davis, it expressly rejected the holding of First Beverly Bank v. Adeeb (In re Adeeb), 787 F.2d 1339 (9th Cir. 1986), as having any

---

[4] In Davis, the debtor, who was unable to satisfy a promissory note related to the financing of his pharmacy business, deeded his one-half interest in his home to his spouse on the advice of counsel. Thereafter, the promissory note was paid by the debtor's business partner, who commenced suit against the debtor for contribution. The partner obtained a default judgment against the debtor and then filed a fraudulent conveyance action against him seeking to set aside the transfer of the marital residence. At that point, the debtor's attorney advised him to seek the advice of bankruptcy counsel. The debtor's bankruptcy attorney advised the debtor to reverse the transfer of his home to his spouse. The debtor took that advice and his spouse executed a deed which was recorded one day before the debtor filed a Chapter 7 petition. The debtor disclosed the existence of the transfers which had taken place within one year of the bankruptcy filing. 911 F.2d at 561.

14

application to the facts in <u>Bajgar</u>. In <u>Adeeb</u>, the Ninth Circuit interpreted the term "transferred" as meaning "transferred and remained transferred." In that case, the debtor, on the advice of counsel, had transferred various properties within one year of the filing of his bankruptcy petition with intent to hinder, delay, or defraud his creditors. Upon the advice of knowledgeable bankruptcy counsel he began to reverse the transfers, but he had failed to complete the re-transfers before an involuntary petition was filed against him. 787 F.2d at 1342.

Despite its holding with respect to the debtor who was the subject of an involuntary petition, the Ninth Circuit, in the words of the First Circuit, "enunciated a different rule with respect to a debtor who filed a *voluntary* bankruptcy petition." 104 F.3d at 500. That rule is as follows:

> "[A] debtor who transfers property within one year of bankruptcy with the intent penalized by section 727(a)(2)(A) may not be denied discharge of his debts if he reveals the transfers to his creditors, *recovers substantially all of the property before he files his bankruptcy petition*, and is otherwise qualified for a discharge."

<u>Bajgar</u>, 104 F.3d at 500 (quoting <u>Adeeb</u>, 787 F.2d at 1345 (emphasis added)). Indeed, the First Circuit stated:

> We recognize that reading the term "transferred" to mean "transferred and remained transferred," could be construed, in certain instances, to advance the "purpose of the Bankruptcy Act to [distribute] the assets of the bankrupt . . . among creditors and then to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." <u>Williams v. United States Fidelity & Guaranty Co.</u>, 236 U.S. 549, 554-55, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915); <u>Adeeb</u>, 787 F.2d at 1345. This purpose affords the "honest but unfortunate debtor who surrenders for distribution

15

the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934).

104 F.3d. at 501. The First Circuit also recognized the practical considerations favoring the

honest but unfortunate debtor which persuaded the Ninth Circuit to formulate its rule:

"It is not uncommon for an uncounseled or poorly counseled debtor faced with mounting debts and pressure from his creditors to attempt to protect his property by transferring it to others. Upon later reflection or upon obtaining advice from experienced bankruptcy counsel, the debtor may realize his original transfer of property was a mistake.

104 F.3d at 501 n.2 (quoting Adeeb, 787 F.2d at 1345).[5]

This Court's review of the First Circuit's decision in Bajgar does not yield an

unequivocal result. Indeed, the First Circuit's statement that it need not decide the issue

now confronting this Court may be an indication of its hesitancy, in the absence of an

actual case and controversy, to choose between conflicting policies, namely the

enforcement of a statute whose meaning is plain according to its terms - - the positions

emphasized by the Eleventh Circuit in Davis, 911 F.2d at 562, and the Seventh Circuit in

McWilliams, 284 F.3d at 792 - - versus the equitable and practical considerations recognized

by the Ninth Circuit in Adeeb, 787 F.2d at 1345. Nevertheless, the First Circuit's refusal to

construe the term "transferred" as meaning "transferred and remaining transferred"

counsels against this Court's adoption of the Adeeb approach absent compelling evidence,

not present in the existing record, that the Debtor received ill-advice from counsel when

---

[5] The First Circuit observed that Bajgar had been well-counseled by an experienced bankruptcy attorney at the time he made the initial fraudulent transfer. Id.

16

he executed the initial transfer and intended to remedy this mistake by virtue of the later

transfer. This is particularly the case in view of the conflicting testimony of the Debtor and

Attorney Wyman, and this Court's need to assess the credibility of witnesses.

Additionally, because Count I contains allegations concerning the Debtor's trucks,

which the Defendants did not address in their pleadings, and because this Court must

draw all possible inferences in the light most favorable to the Trustee, *see* Desmond v.

Varrasso, 37 F.3d at 763, this Court finds that summary judgment is unwarranted with

respect to Count I of the Trustee's Complaint. Moreover, because summary judgment on

Counts III, IV, V and VII hinge on summary judgment on Count I, the Court must deny the

Defendants' Motion with respect to those counts.

## V. CONCLUSION

In accordance with the foregoing, the Court shall enter an order denying the

Defendants' Motion for Partial Summary Judgment.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: June 20, 2007
cc: Frederick J. Watson, Esq., Adam J. Ruttenberg, Esq.

17